FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR -3 PM 1:28

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRENDA BROWN | CIVIL ACTION |
| VERSUS | NUMBER: 04-3038 |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION | SECTION: "C"(5) |

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 9, 10).

Brenda Brown, plaintiff herein, filed an application for SSI benefits on February 21, 2002, with a protective filing date of January 31, 2002, alleging disability as of June 30, 1996. (Tr. pp. 33-35, 47). In a Disability Report completed by plaintiff on February 21, 2002, she identified arthritis, impaired ability to

concentrate, headaches, and general body aches, particularly in her back, ankles, and hands, as the conditions resulting in her inability to work. (Tr. pp. 37-46). Those conditions first began bothering plaintiff sometime in 1989 but ultimately caused her to cease employment in June, 1996. (Tr. p. 38).

Plaintiff's application for SSI benefits was denied at the first step of the Commissioner's administrative review process on June 19, 2002. (Tr. pp. 21-22D). Pursuant to her request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on October 1, 2003, at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 165-183). On October 31, 2003, the ALJ issued a written decision in which she concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 12-19). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 4-6). It is from this unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

In her cross-motion for summary judgment, plaintiff frames the issue for judicial review as follows:

   I.  The ALJ erred in failing to give proper weight to the
       treating physician's medical assessment.

2

(Plaintiff's memo, p. 6).

Relevant to the issue to be decided by the Court are the following findings made by the ALJ:

1. [t]here is no proof that claimant has engaged in substantial gainful activity at any time relevant to this decision.

2. [t]he evidence shows that claimant has a combination of impairments (hypertension, chronic anxiety and depression, history of intravenous drug abuse, chronic lumbar strain and polyarthralgias) which can be considered as "severe" within the meaning of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p.

3. [t]he medical evidence fails to demonstrate that claimant's impairments meet or equal the criteria of any impairment described at 20 C.F.R. Pt. 404, Subpt. P, App.1.

4. [c]laimant's testimony did not establish the existence of disabling limitation, was not consistent with the objective medical evidence and cannot be considered credible.

5. [c]laimant is forty-six years old, which is defined as a younger individual. She has a sixth-grade education and no past relevant work.

6. [c]laimant retains the residual functional capacity to perform a wide range of light work that does not involve interacting with the general public and provides claimant with an opportunity to change positions from sitting to standing for a few minutes in every hour.

7. [c]laimant has no past relevant work.

8. [g]iven the above vocational profile and residual functional capacity, the vocational expert identified the following jobs existing in significant numbers in the State of Louisiana, which claimant is capable of performing: maid, miscellaneous food preparer, janitor and nursery worker.

> 9.  [c]laimant has not been under a "disability" as defined in the Social Security Act at any relevant time through the date of this decision.

(Tr. pp. 18-19).

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not re-weigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to

resolve, not the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. <u>Harrell</u>, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

> 1. [a]n individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. [a]n individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. [a]n individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.
>
> 4. [i]f an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be

made.

5. [i]f an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exists. Fraga, 810 F.2d at 1304 (citing Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

Plaintiff was the first witness to testify at the administrative hearing held on October 1, 2003. She was forty-six years old at the time and had finished the sixth grade. She has not obtained a GED and has no additional training. However, she can read and is able to perform basic addition. (Tr. p. 169).

Plaintiff was not working at the time of the hearing and had

not done so since the early 1980's. (Tr. p. 170). She further testified that she became ill with arthritis in 1994, which manifested itself mostly in her back and knee. According to plaintiff, her right knee gives out on her on occasion; however, she has not had surgery performed. (Tr. pp. 170-171). Plaintiff testified that her treating physician had talked about her having a knee replacement but has not performed one. (Tr. p. 171).

Plaintiff also advised that her back hurts mostly at the bottom and that she cannot sit for long periods. When she sits for too long a time, the pain forces her to lie down and use a heating pad. (Id.). It is plaintiff's understanding that her physician wants to perform an "MI" [sic] of her back because x-rays fail to show why her back is causing pain. (Tr. p. 172). Lastly, plaintiff suffers with headaches and becomes sleepy from the medication which she takes. (Id.).

Plaintiff is able to bathe and, generally, to dress herself. However, she cannot sweep or vacuum. Nor can she cook, shop, or drive. (Tr. pp. 173, 177). When asked why she could not drive, plaintiff advised the ALJ that she cannot bend her knee and her back hurts her. (Tr. p. 174). According to her testimony, plaintiff spends most of her time at home. (Tr. p. 173). While there, she mainly watches television and frequently lays in bed with a heating pad. (Tr. pp. 174-175). She is able to walk for approximately one

block and sit for thirty minutes. However, plaintiff stated that her knee gave out on her a great deal. (Tr. p. 174). Therefore, she has utilized a cane for at least six months. (Tr. p. 175).

Plaintiff further testified that she has problems with her wrists, stating that, when she tries to get into her bed, her wrists give out. (Tr. p. 175). She claims also to have problems dropping things and is lacking in energy. (Tr. p. 176). Plaintiff further advised that she forgets things and that she goes to a mental health clinic because she sees ghosts and hears voices calling to her. (Tr. p. 178). At times, she has difficulty sleeping. (Tr. p. 180). Plaintiff advised that she would like to socialize with others but could not do so because of the condition of her back. (Tr. pp. 176-177).

Patricia Ehlinger, a VE, was next to take the stand. The ALJ postulated a hypothetical question to the VE as to an individual described as follows: "46 years old, has a sixth grade marginal education, no past relevant work, residual functional capacity for light work with the requirements that the individual would need to change position from sitting or standing to sitting for a few minutes in every hour, and would be unable to interact appropriately with the general public". The VE was then asked whether there would be work existing in the regional or national economies for such a person to perform, to which the VE responded

in the affirmative. (Tr. p. 181). Examples supplied by the VE were maids and housemen, miscellaneous food preparation occupations, light janitorial services, and light nursery worker. (Tr. pp. 181-182).

Plaintiff's counsel then changed the hypothet to inquire as to an individual who could stand less than two hours in a eight-hour work day, walk less than one hour in the same time period, and sit less than two hours. The VE responded that there would be no full time employment for such a person. (Tr. p. 182). Further, if that person had a marked inability to interact with co-workers and/or supervisors, she would be unable to work at all. (Id.).

Medical records pertaining to plaintiff's condition are relatively sparse. Her primary care physician, Dr. Threasa C. Adderley, furnished progress notes commencing August 22, 2001. At that time, plaintiff complained of high blood pressure and headaches and had consulted with the doctor for purposes of having her Clonidine refilled. (Tr. p. 106). She consulted again with Dr. Adderley on September 18 and 21, 2001, following which Dr. Adderley completed a medical report dated September 21, 2001 pertaining to plaintiff's condition. (Tr. pp. 103-104). The medical report documented plaintiff's chief complaint as joint pain in the wrist and knees, with a history of high blood pressure of three years' duration. Swelling in the joints of the wrists and knees was

noted, causing a decreased range of motion. Osteoarthritis of the knees was diagnosed. Dr. Adderley considered plaintiff disabled from all work at that time while she did a work up to rule out lupus. (Tr. pp. 102-104). X-rays were ordered.

Results of plaintiff's x-rays reflected marked degenerative joint disease of the knees bilaterally and minimal, if any change, in the lower lumbar spine. The results of x-rays pertaining to the left and right wrists are illegible. (Tr. pp. 100-101). Plaintiff again consulted with Dr. Adderley on October 22, 2001 complaining of a cold. She was assessed as suffering with arthritis at that time. (Tr. p. 97).

On March 13, 2002, plaintiff presented to Dr. Adderley complaining of knee pain. Edema was noted as was pain on flexion and extension of the knees. Osteoarthritis was diagnosed together with high blood pressure. Celebrex was prescribed. (Tr. p. 96). On that same date, Dr. Adderley filled out a medical report form. In that document, Dr. Adderley listed plaintiff's chief complaint as osteoarthritis of the knees with chronic knee pain. High blood pressure, characterized as "moderate", was also noted. According to the doctor, x-rays of plaintiff's knees showed "moderate to severe" degeneration of both knees. Dr. Adderley opined that plaintiff could perform sedentary work but commented that plaintiff was a slow learner and that she may not be able to learn sedentary skills

because of her mental status. She also noted rheumatoid arthritic changes in plaintiff's wrists that might limit plaintiff in the repetitive use of her hands and fingers. (Tr. p. 95). On that same date, Dr. Adderley filled out a residual functional capacity form wherein she indicated plaintiff could perform light work, with exceptions, because plaintiff's ability to walk was limited due to the arthritic condition of her legs and knees. (Tr. p. 94).

On April 22, 2002, at the request of the Disability Determination Services, plaintiff saw Dr. Mittie K. Doyle. Dr. Doyle performed a functional assessment of plaintiff. In connection with that evaluation, Dr. Doyle found plaintiff had a normal ability to push, pull, reach, sit, and stand. Her gait was normal and she could stand and walk on the balls and heels of each foot. Her ability to balance was not compromised and her ability to crouch was normal. She did not need an ambulatory device to stand or walk. Plaintiff could get on and off the examining table and dress independently. Her ability to grip, pinch, grasp, handle, and finger with both hands and arms was normal. (Tr. p. 87).

Following that examination, Dr. Doyle summarized plaintiff's medical conditions as follows: hypertension, recurrent chest pain not typical of the pain of myocardial ischemic origin, polyarthralgias, chronic lumbar strain, history of intravenous drug

11

use, and chronic anxiety and chronic depression. On the basis of that evidence, Dr. Doyle concluded that plaintiff would have "difficulty with heavy physical work". She further opined that "because of ongoing joint pain, [plaintiff] may have difficulty with repetitive bending, stooping, crouching, crawling, or lifting." Dr. Doyle felt that plaintiff might benefit from a formal psychiatric evaluation. (Tr. pp. 87-88).

On June 10, 2002, a Psychiatric Review Technique form was completed by Charles R. Burchell, Ph.D. in light of the medical evidence then extant. He noted no medically determinable mental impairment of plaintiff. (Tr. p. 107).

On June 14, 2002, plaintiff again consulted with Dr. Adderley who documented right knee and lower back pain. Chronic osteoarthritis of both the knee and back was diagnosed. Relafen was prescribed and a referral was contemplated to an orthopedic doctor at Tulane. (Tr. p. 93). The results of radiology performed on August 26, 2002 by Dr. Charles Munoz again documented degenerative joint disease of the knees, with a questionable loose body within the right knee just posterior to the spinous process. Frontal and lumbar views of the lumbosacral spine were unremarkable. Neither spondylolysis nor spondylolisthesis could be documented and good alignment of the vertebral bodies was noted. (Tr. p. 138). On August 28, 2002, Dr. Adderley filled out a form

pertaining to whether plaintiff suffered with systemic lupus. She declined to check the form at either the "yes" or "no" lines but noted that plaintiff had a positive clinical presentation for the disease but negative blood testing. Further blood testing was ordered. (Tr. p. 159).

Lastly, on September 23, 2003, without further objective medical testing, Dr. Adderley filled out a Physical Capacity Evaluation form indicating that plaintiff could stand for less than two hours in an eight-hour work day, could walk less than one hour in the same time frame, could sit less than two hours in an eight hour work day, and could frequently lift/carry a maximum of 10 pounds. (Tr. p. 161). Additionally, plaintiff could use her hands for repetitive grasping and handling and fine manipulation and fingering but could not push or pull. She further opined that plaintiff could not use her feet for repetitive movements as in operating foot controls. The doctor stated that plaintiff could never bend, kneel, squat, crawl, or climb stairs or ladders. However, she could reach above her shoulders. (Tr. p. 162).

Plaintiff has additional medical records pertaining to mental health treatment. However, this aspect of her condition has not been alleged to have any bearing on the current appeal before the Court. Accordingly, a discussion of those documents will be pretermitted, except to note that, while she testified before the

ALJ that she had stopped drinking eight years earlier (Tr. p. 172), the mental health records indicate she still utilized alcohol on a daily or every-other-day basis subsequent to that time. (Tr. pp. 142, 144-145).

As noted earlier, the crux of plaintiff's current complaint is that the ALJ did not give proper credence to the opinions of Dr. Adderley, plaintiff's primary care physician. In her opinion, the ALJ noted that plaintiff visited Dr. Adderley on an as-needed basis and that she was not receiving regular or consistent treatment considering the alleged magnitude of her physical problems. (Tr. p. 17). Furthermore, in rejecting Dr. Adderley's opinion of total disability, the ALJ gave specific reasons for so doing as follows:

> [a]fter careful review of Dr. Adderly's [sic] reports and physical assessment, it is clear that she vacillates in her opinion with regard to claimant's functional capacity. Her initial report indicated more restrictive limitations than the second report and neither are consistent with the September 2003 physical capacity evaluation. It is noted that despite these changes of opinion, there are no changes in diagnostic findings or substantial differences in clinical presentation. Further, Dr. Adderly's [sic] opinions are inconsistent with the physical examination findings of Dr. Doyle, who found good range of motion and essentially no problems with claimant performing all but heavy physical work and work involving repetitive bending, stooping, crouching, crawling or lifting due to ongoing joint pain. (Exh. 3F). In light of the above factors, Dr. Adderly's [sic] conclusory reports and assessments with regard to claimant's functional abilities cannot be granted substantial weight as they are inconsistent with the remaining evidence of record and her own findings.

(Tr. p. 16).

The law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of <u>any</u> physician when the evidence supports a contrary conclusion. <u>Newton v. Apfel</u>, 209 F.3d 448, 455 (5th Cir. 2000)(quoting <u>Paul v. Shalala</u>, 29 F.3d 208, 211 (5th Cir. 1994), <u>overruled in part on other grounds by</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 1120 S.Ct. 2080 (2000)). A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. <u>Newton</u>, 209 F.3d at 456 (citing <u>Brown v. Apfel</u>, 192 F.3d 492, 500 (5th Cir. 1999) and <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir. 1994), <u>cert. denied.</u> 514 U.S. 1120, 115 S.Ct. 1984 (1995)). Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion. <u>Newton</u>, 209 F.3d at 456; <u>Martinez v. Chater</u>, 64f F.3d 172, 176 (5th Cir. 1995); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1057 (5th Cir. 1987); <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985). The Regulations require the ALJ to perform a detailed analysis of a treating physician's view under the criteria set forth in 20 C.F.R. §416.927(d) <u>only</u> in the absence of controverting medical evidence from other treating and/or examining physicians. <u>Newton</u>, 209 F.3d at 453.

Here, the ALJ clearly gave consideration to the opinions of Dr. Adderley and rejected her opinion based upon the record as a whole. The Court sees no basis upon which to conclude that the ALJ was incorrect in reaching the conclusion which she did. The factual basis upon which the ALJ did so is amply supported by the record. Specifically, Dr. Adderley did put forth divergent opinions concerning the plaintiff's residual functional capacity, ranging from total disability on September 21, 2001 (Tr. p. 104) to the ability to perform either sedentary (Tr. p. 95) or light work (Tr. p. 94) on March 13, 2002 to total disability again on September 23, 2003 (Tr. p. 161) without their being any substantial change in plaintiff's objective diagnostic testing. Further, the ALJ determined that the objective testing results in the record were inconsistent with a wholesale inability to perform work at some level.

The Court further notes that the responsibility for weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Griego v. Sullivan, 940 F. 2d 942, 945 (5th cir. 1991); Wren v. Sullivan, 925 F.2d 123, 129 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). In addition, the law is clear that the burden is upon the plaintiff to produce objective medical

evidence of a condition that could reasonably be expected to produce the level of pain or other symptoms complained of. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). The ALJ must then weigh the plaintiff's testimony and subjective complaints against the objective medical evidence that has been produced. Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing Jones, 702 F.2d at 621 n.4). The evaluation of a plaintiff's subjective symptoms is a task particularly within the province of the ALJ for it was the ALJ who had an opportunity to observe the plaintiff, not the Court. Harrell, 862 F.2d at 480. The ALJ may discredit a plaintiff's subjective complaints of pain and other limitations if she carefully weighs the objective medical evidence and articulates a reason for doing so. Anderson v. Sullivan, 887 F. 2d 630, 633 (5th Cir. 1989)(citing Abshire v. Bowen, 848 F.2d 638, 642 (5th Cir. 1988)).

> In this regard, the ALJ found as follows:
>
> [c]laimant is exaggerating her complaints. She is not receiving regular or consistent treatment for any of the impairments that she alleges. She visits Dr. Adderly [sic] on an as-needed basis, has not required surgery or aggressive treatment for her symptoms and her mental health treatment is sporadic. ... The degree of symptom severity and functional limitation claimant alleges cannot be credited. Claimant's overall credibility is further undermined by her denial of alcohol use during 2002. ...

> Claimant may experience some degree of functional loss as a result of her medically determined impairments; however, such loss, in-and-of itself, is not incompatible with the performance of certain levels of sustained work activity. Neither the objective medical evidence nor claimant's testimony establishes that claimant's ability to function is so severely impaired as to preclude all work-related activities.

(Tr. p. 17).

It is the opinion of the Court that the reasons stated by the ALJ in her opinion are sufficient to comply with the tenets of established by law and that there is no basis upon which this Court should conclude that the ALJ is in error in finding that plaintiff is not under a disability.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judges report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this 2nd day of March, 2006.

                                                         _____
                                                              ALMA L. CHASEZ
                                         UNITED STATES MAGISTRATE JUDGE